UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    Plaintiff, | :<br>:   CIVIL ACTION NO.<br>:   3:11-CV-1543(JCH) |
| and | : |
| TAIKA BILBO, ET AL<br>    Interveners, | :   JUNE 19, 2012<br>:<br>: |
| v. | :<br>: |
| CLIFTON HYLTON, ET AL,<br>    Defendants. | :<br>: |

**RULING ON DEFENDANT'S MOTION TO DISMISS [DOC. NO. 16]**

**I.    INTRODUCTION**

Plaintiff United States of America originally brought this action on behalf of Jermaine Bilbo, Taika Bilbo, DeMechia Wilson, D.A. Wilson, and D.E. Wilson against the defendants Clifton Hylton, Merline Hilton, and Hylton Real Estate Management, INC. The government alleges that the defendants illegally discriminated against complainants in violation of the Fair Housing Act of 1968, as amended, 42 U.S.C. §§ 3601-3631, by making an oral statement communicating a preference for white tenants and refusing to allow Jermaine and Taika Bilbo to sublease the defendant's property to DeMechia Wilson, an African American.

**II.    STANDARD OF REVIEW**

A.    <u>Subject Matter Jurisdiction</u>

A district court properly dismisses a case for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure when the court lacks the statutory or constitutional power to adjudicate it.  <u>Makarova v. United States</u>, 201 F.3d

110, 113 (2d Cir. 2000). In assessing a motion to dismiss for lack of subject matter jurisdiction, the court "accept[s] as true all material allegations in the complaint." Shipping Fin. Serv. Corp. v. Drakos, 140 F.3d 129, 131 (2d Cir. 1998) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). The court, however, refrains from "drawing from the pleadings inferences favorable to the party asserting [jurisdiction]." Id. (citing Norton v. Larney, 266 U.S. 511, 515 (1925)). On a motion to dismiss pursuant to Rule 12(b)(1), the plaintiff must establish by a preponderance of the evidence that the court has subject matter jurisdiction over the Complaint. Makarova, 201 F.3d at 113; see also Malik v. Meissner, 82 F.3d 560, 562 (2d Cir. 1996); In re Joint E. & So. Dist. Asbestos Litig., 14 F.3d 726, 730 (2d Cir. 1993). Courts evaluating Rule 12(b)(1) motions "may resolve [] disputed jurisdictional fact issues by reference to evidence outside the pleadings, such as affidavits." Zappia Middle East Constr. Co. Ltd. v. Emirate of Abu Dhabi, 215 F.3d 247, 253 (2d Cir. 2000).

    B.    Failure to State a Claim

Upon a motion to dismiss pursuant to Rule 12(b)(6), the court must determine whether the plaintiff has stated a legally cognizable claim by making allegations that, if true, would show he is entitled to relief. See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 557 (2007) (interpreting Rule 12(b)(6), in accordance with Rule 8(a)(2), to require allegations with "enough heft to 'sho[w] that the pleader is entitled to relief'"). The court takes the factual allegations of the complaint to be true, Hemi Group, LLC v. City of New York, 130 S. Ct. 983, 986-87 (2010), and from those allegations, draws all reasonable inferences in the plaintiff's favor, Fulton v. Goord, 591 F.3d 37, 43 (2d Cir. 2009).

To survive a motion pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 129 S. Ct. at 1949 (2009) (quoting Twombly, 550 U.S. at 556).

The plausibility standard does not impose an across-the-board, heightened fact pleading standard. Boykin v. KeyCorp, 521 F.3d 202, 213 (2d Cir. 2008). The plausibility standard does not "require[] a complaint to include specific evidence [or] factual allegations in addition to those required by Rule 8." Arista Records, LLC v. Doe 3, 604 F.3d 110, 119 (2d Cir. 2010); see Erickson v. Pardus, 551 U.S. 89, 94 (2007) (holding that dismissal was inconsistent with the "liberal pleading standards set forth by Rule 8(a)(2)"). However, the plausibility standard does impose some burden to make factual allegations supporting a claim for relief. As the Iqbal Court explained, it "does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." Iqbal, 129 S. Ct. at 1949 (citations and internal quotations omitted). Under the Second Circuit's gloss, the plausibility standard is "flexible,"

3

obliging the plaintiff "to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." Boykin, 521 F.3d at 213 (citation omitted); accord Arista Records, 604 F.3d at 120.

## III.   PROCEDURAL HISTORY

On October 7, 2011, United States of America ("USA") filed this action on behalf of Jermaine Bilbo (Mr. Bilbo), Taiko Bilbo (Ms. Bilbo), DeMechia Wilson (Ms. Wilson), D.A. Wilson, and D.E. Wilson.  Compl. at ¶ 1.  On November 4, 2011, Mr. Bilbo, Ms. Bilbo, Ms. Wilson, D.A. Wilson, and D.E. Wilson ("interveners") filed a Motion to Intervene (Doc. No. 7) under subsection 3612(o)(2) of title 42 of the United States Code and Rule 24(a) of the Federal Rules of Civil Procedure.  On December 27, 2011, this court granted the Motion to Intervene absent objection (Order Doc. No. 15).  The Complaint alleges that defendants Clifton Hylton (Mr. Hylton), Merline Hylton (Ms. Hylton), and Hylton Real Estate Management, INC. ("defendants") violated subsections 3604(a), 3604(b), and 3604(c) of title 42 of the United States Code.  Compl. at ¶ 20. The Complaint alleges that interveners suffered damages and are aggrieved persons under subsection 3602(i) of title 42 of the United States Code.  Id.

On January 7, 2012, defendants filed a Motion to Dismiss (Doc. No. 16) under Rule 12(b)(1).  On January 20, 2012, USA filed a Memorandum in Opposition to the Motion to Dismiss (Doc. No. 17).

## IV.   FACTUAL BACKGROUND

Mr. Bilbo is an African American man and his wife, Ms. Bilbo, is a Caucasian woman.  Compl. at ¶ 4.  Ms. Wilson is an African American woman and her two minor children, D.E. Wilson and D.A. Wilson, are both African American.  Id.  Defendant Mr.

Hylton is a black man and his wife, defendant Ms. Hylton, is a black woman. Memorandum in Support of Motion to Dismiss (Doc. 16-1) at 8.

On approximately May 1, 2010, Mr. and Mr. Bilbo each signed a one-year lease ("Lease"), commencing on May 1, 2010 and ending on April 30, 2011, to rent a single-family home located at 5 Townline Road, Windsor Locks, Connecticut ("Property"). Compl. at ¶¶ 5, 8. Ms. Hylton owned the Property, and Mr. Hylton managed the Property as an officer of Hylton Real Estate Management, Inc. ("HREM").[1] Id. at ¶¶ 5-6. Mr. and Ms. Hylton lived at the Property for six years prior to leasing the Property to Mr. and Ms. Bilbo. Mem. in Supp. at 8.

The Lease, which was written on the letterhead of HREM, provided in Paragraph 14 ("Paragraph 14") that Mr. and Ms. Bilbo must obtain prior written consent from the landlord before subleasing the Property. Compl. at ¶ 9. On approximately May 31, 2010, Mr. Bilbo telephoned Mr. Hylton, and informed him that he (Mr. Bilbo) would need to terminate the Lease and would find a sub-lessee to take over the Lease. Id. at ¶ 10. In a letter dated June 1, 2010, Mr. Bilbo reiterated to Mr. Hylton that he (Mr. Bilbo) intended to terminate the Lease in what Mr. Bilbo hoped to be a "mutually beneficial" manner. Id. at ¶ 11.

On June 18, 2010, Mr. and Ms. Bilbo advertised the Property on Craigslist to search for a sub-lessee. Id. at ¶12. The advertisement stated that the Property would be available on July 1, 2010. Id. On June, 21, 2010, Ms. Wilson responded to the advertisement. Id. at ¶ 14. On June 22, 2010, Mr. Bilbo showed Ms. Wilson the Property, and Ms. Wilson expressed an interest in subleasing. Id. Mr. Bilbo called Mr.

---

[1] HREM is a corporation registered with the State of Connecticut, in which Mr. Hylton is listed as the president, secretary, and director. Compl. at ¶ 7.

Hylton and informed him that he (Mr. Bilbo) had found a tenant to sublease the Property. Id. at ¶ 15. Mr. Hylton told Mr. Bilbo that he (Mr. Hylton) would approve the sublease but changed his mind after learning that Ms. Wilson was African American. Id. Mr. Hylton told Mr. Bilbo the following: Mr. Hylton did not want "too many blacks" at the Property; he only rented to Mr. and Ms. Bilbo's because Ms. Bilbo was white, and it was a good "mix"; and Mr. Bilbo would need to find "good white people that could afford the Property, because [Wilson] is not going to be able to pay." Id. Ms. Bilbo subsequently telephoned Ms. Wilson to inform her that she would not be able to rent the Property due to her race. Id. at ¶16.

Pursuant to subsections 3610(a) and (b) of title 42 of the United States Code, the Secretary of the Department of Housing and Urban Development ("Secretary") conducted an investigation of the alleged Fair Housing Act ("FHA") violations committed by the defendants. Id. at ¶17. Pursuant to subsection 3610(g)(1) of title 42 of the United States Code, the Secretary determined that reasonable cause existed to believe that the defendants committed illegal discriminatory housing practices in connection with the Property. Id. On August 25, 2011, pursuant to subsection 3610(g)(2)(A) of title 42 of the United States Code, the Secretary issued a Determination of Reasonable Cause and Charge of Discrimination, charging that the defendants had engaged in discriminatory practices in violation of the FHA. Id. On approximately September 7, 2011, pursuant to subsection 3612(a) of title 42 of the United States Code, the complainants elected to resolve the charges in a federal civil action. Id. at ¶18. Pursuant to subsection 3612(o) of title 42 of the United States Code,

the Secretary authorized the United States Attorney General to file this action on behalf of complainants. Id. at ¶ 19.

**V.     DISCUSSION**

   A.     Subject Matter Jurisdiction

The defendants claim that the interveners are not "aggrieved persons" within the definition of subsection 3602(i) of title 42 of the United States Code and therefore have no standing. Mem. in Supp. at 3-4. An "'[a]ggrieved person' includes any person who (1) claims to have been injured by a discriminatory housing practice; or (2) believes that such person will be injured by a discriminatory housing practice that is about to occur." 42 U.S.C. §3602(i). Actual injury may exist solely where a statute creates a legal right, and that legal right was invaded. Havens Realty Corp. v. Coleman, 455 U.S. 363, 372 (1982). Furthermore, under the FHA, discriminatory remarks that a defendant merely communicates to a person may sufficiently injure that person. See Ragin v. N.Y. Times, 923 F.2d 995, 1005 (2d Cir. 1991) (ruling that a plaintiff's mere reading of a discriminatory newspaper advertisement could establish standing under the FHA if that advertisement caused substantial distress.)

The defendants cite Avalonbay Communities, Inc. v. Orange, 256 Conn. 557, 592 (2001) to support their argument that USA's assertion that the interveners "suffered damages" is not specific enough to satisfy the definition of an aggrieved person. Mem. in Supp. at 4. The Avalonbay Court stated that to be an aggrieved person, a plaintiff is required to allege "distinct and palpable injuries fairly traceable to [the defendants'] actions." Avalonbay, 256 Conn. at 592. The defendants, however, misread this interpretation of an aggrieved person by construing the interpretation narrowly. The

7

Avalonbay Court stated that an injury need not be economic or tangible in order to confer standing and that the "current statutory definition of [an] aggrieved person was meant to reaffirm the broad holdings of Havens." Avalonbay, 256 Conn. at 592

Here, USA claims that Mr. Hylton orally communicated his preference for white tenants to Mr. Bilbo, an African American, and prevented Mr. and Ms. Bilbo from subleasing the Property to Ms. Wilson, an African American.  See Ragin, 923 F.2d at 1005.  USA claims that Ms. Bilbo communicated Mr. Hylton's preference for white tenants to Ms. Wilson and advised her that she would not be able to rent the Property due to her race.  See id.  Although USA did not describe the damages that the interveners suffered with great specificity within the Complaint, USA claims that the defendants invaded the interveners' legal rights as created by the FHA.  Havens, 455 U.S at 372; see Ragin, 923 F.2d at 1005.  Therefore, USA's allegations are sufficient to establish that the interveners are aggrieved persons under subsection 3602(i) of title 42 of the United States Code, and the defendants' challenge of the interveners' standing is without merit.

     B.    Failure to State a Claim

          1.    USA's Pleadings

This court will also address the defendants' assertion that USA failed to state a claim upon which the relief demanded can be granted.[2]  Motion to Dismiss (Doc. No. 16) at 1.  In the Complaint, USA alleges that the defendants violated the following subsections of title 42 of the United States Code: subsection 3604(a) for refusing to negotiate for the rental of, or otherwise made unavailable or denied dwellings to

---

[2] Defendants do not cite to Rule 12(b)(6), but they do style part of their argument as a motion to dismiss for failure to state a claim.  Motion to Dismiss at 1.

8

persons because of race; subsection 3604(b) for discriminating against any person in the terms conditions, or privileges of rental of a dwelling because of race; and subsection 3604(c) for making statements with respect to the rental of dwellings that indicate a preference, limitation, or discrimination based on race, or an intention to make any such preference, limitation, or discrimination.  Compl. at ¶ 20.

In a civil action, the court may award equitable relief and monetary damages for violations of the FHA.  42 U.S.C. § 3614(d).  The FHA protects citizens against both the denial of housing as well as psychic injury caused by discrimination in connection with the housing market.  United States v. Space Hunters, Inc., 429 F.3d 416, 424 (2d Cir. 2005).

Here, USA alleges that Mr. Hylton, an apparent agent of HREM and Ms. Hylton regarding the rental of the Property, orally stated that he did not want "too many blacks" at the Property and that Mr. Bilbo would need to find "good white people" to rent the Property to.  Compl. ¶ 9, 15.  This allegation establishes a plausible, prima facie claim of direct discrimination, resulting in the defendants' violation of subsection 3604(c) of title 42 of the United States Code.  See Iqbal, 129 S. Ct. at 1949.  By alleging that Mr. Hylton barred Mr. and Ms. Bilbo from subleasing the Property to Ms. Wilson due to Ms. Wilson's race, USA presented a plausible, prima facie claim of direct discrimination, resulting in the defendants' violation of subsections 3604(a) and (b) of title 42 of the United States Code.  See id.  The denial of housing and psychic damages to the interveners would be compensable upon a favorable court ruling.  See Space Hunters, 429 F.3d at 424.

### 2. Defendants' 12(b)(6) Argument

Parties to a contract cannot agree to disregard statutes that are based on important public policy. See State v. Lynch, 287 Conn. 464, 477 (2008). . Defendants, however, argue that Paragraph 14 of the Lease grants the defendants discretion to approve or deny subleases and provides the defendants with an independent and nondiscriminatory basis for refusing to accept or negotiate a sublease. Mem. in Supp. at 2. Paragraph 14, however, does not supersede the FHA, nor does it permit the defendants to disregard the FHA. See Lynch, 287 Conn at 477; see also 42 U.S.C. § 3615 ("[A]ny law of a State or political subdivision of a State, or of any other jurisdiction that purports to require or permit any action that would be a discriminatory housing practice [under the FHA] shall to that extent be invalid.") Thus, if the failure to approve a sublease was based on a violation of the FHA, as alleged here, the existence of Paragraph 14 does not defeat the Complaint's causes of action under the FHA

The defendants assert that, because Mr. and Ms. Hylton are black and had lived in the Property prior to Mr. and Ms. Bilbo's tenancy, any damages that the interveners suffered were based on Paragraph 14 of the Lease, rather than on racial animus. Mem. in Supp. at 8. For a motion to dismiss, however, the court takes the plaintiffs' factual allegations to be true. Hemi Group, 130 S. Ct. at 986-87. The Complaint asserts plausible, prima facie causes of action under the FHA, and the defendants' factual assertions do not address the sufficiency of the Complaint.[3]

---

[3] Similarly, the defendants' assertion that Mr. and Ms. Bilbo materially breached the lease prior to the defendants' alleged FHA violations is not an argument addressed to the sufficiency of the Complaint. See Mem. in Supp. at 4-6.

10

## VI. CONCLUSION

For the foregoing reasons, the court denies the defendant's Motion to Dismiss the Complaint.

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 19th day of June, 2012.

        /s/ Janet C. Hall
Janet C. Hall
United States District Judge