UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
|     Plaintiff, | : | CIVIL ACTION NO. |
| | : | 3:11-CV-1543(JCH) |
| and | : | |
| | : | |
| TAIKA BILBO, ET AL | : | JULY 26, 2013 |
|     Interveners, | : | |
| | : | |
| v. | : | |
| | : | |
| CLIFTON HYLTON, ET AL, | : | |
|     Defendants. | : | |

**RULING RE: MOTION FOR ATTORNEY'S FEES (Doc. No. 124) AND
MOTION FOR INJUNCTIVE RELIEF (Doc. No. 126)**

## I.   INTRODUCTION

Plaintiff, the United States of America ("the government"), brought this action to enforce the Fair Housing Act, 42 U.S.C. § 3601, et seq, against defendants Merline Hylton ("Ms. Hylton"), Clifton Hylton ("Mr. Hylton"), and Hylton Real Estate Management ("HREM"). The Connecticut Fair Housing Center ("CFHC") represented the intervenors Jermaine Bilbo ("Mr. Bilbo"), Taika Bilbo ("Mrs. Bilbo"), and DeMechia Wilson ("Wilson"). After a bench trial, the court granted relief to the intervenors, awarding compensatory and punitive damages. See Am. Ruling (Doc. No. 125).

The government and intervenors had also sought injunctive relief; however, they had not articulated with specificity the type of injunctive relief sought. Therefore, the court directed the government and intervenors to file a Motion for Injunctive Relief. Id. at 25. In addition, the intervenors had noticed their intention to seek attorney's fees for the CFHC. In response, the court directed the intervenors to file a

Motion for Attorneys' Fees. Id. at 33. This Ruling responds to both of those Motions.

## II. DISCUSSION

### A. Attorneys' Fees

Under the Fair Housing Act, "[i]n a civil action . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee and costs. 15 U.S.C. § 3613(d). There is no dispute that the intervenors are the prevailing party in this suit.

"The district court retains discretion to determine . . . what constitutes a reasonable fee." Parris v. Pappas, 844 F.Supp.2d 262, 265 (D. Conn. 2012) (quoting Millea v. Metro-North R. Co., 658 F.3d 154, 166 (2d Cir. 2011)). Courts within the Second Circuit apply the lodestar formula—"the product of a reasonable hourly rate and the reasonable number of hours required by the case"—to calculate a "presumptively reasonable fee." Id. (citing Millea, 658 F.3d at 166). "The process is really a four-step one, as the court must: (1) determine reasonable hourly rate; (2) determine the number of hours reasonably expended; (3) multiply the two to calculate the presumptively reasonable fee; and (4) make any appropriate adjustments to arrive at the final fee award." Adorno v. Port Authority of New York and New Jersey, 685 F.Supp.2d 507, 511 (S.D.N.Y. 2010).

1. Reasonable hourly rate

The intervenors seek an award of attorney's fees for CFHC senior staff attorney Timothy Bennett-Smyth. CFHC's billable rate for Attorney Bennett-Smyth is $225 per hour. Kirschner Aff. ¶ 23.

"[A] 'reasonable' fee is a fee that is sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case." Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542 (2010).  "Reasonable hourly rates 'are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." Parris, 844 F.Supp.2d at 266 (citing Blum v. Stenson, 465 U.S. 886, 895 (1984)).

Attorney Bennett-Smyth has been licensed to practice law since 2007. Kirschner Aff. ¶ 8.  He has worked at CFHC for three years, litigating cases pursuant to the Fair Housing Act, 42 U.S.C. § 3601, et seq, and the comparable Connecticut statute, Conn. Gen. Stat. § 46a-64c. Id. at ¶ 11.  Prior to joining CFHC, Attorney Bennett-Smyth practiced as a commercial litigator, but spent a fair amount of time performing pro bono work in the areas of housing and civil rights.  Id. at ¶ 10.  He has tried several cases to verdict.  Id. at ¶ 11.

The court concludes that a rate of $225 per hour is reasonable for an attorney with five to six years of housing law experience.  In Parris, the court held that, "$225 per hour is a reasonable rate for an attorney with five years of legal experience in the context of plaintiff's civil rights litigation." Parris, 844 F.Supp.2d at 267.  The court relied on similar cases within the District of Connecticut in which the court found $225 per hour to be reasonable for an attorney with four to six years of experience, Bridgeport and Port Jefferson Steamboat Co., 2011 WL 721582, at *6 (D. Conn. Feb. 22, 2011), as well as in 2008, for an attorney with eight years of experience, Pappas v. Watson Wyatt & Co., 2008 WL 45385, at *3-5 (D. Conn. Jan. 2, 2008).  Furthermore, the court held in Parris that it was reasonable to bill Attorney Bennett-

Smyth out at $200 per hour. Parris, 844 F.Supp.2d at 267. This rate was when Attorney Bennett-Smyth had only four years of experience. Id. Therefore, it follows that, after gaining more experience over a year and a half period, it is reasonable to bill Attorney Bennett-Smyth out at $225 per hour.

2. Reasonable Number of Hours

The intervenors seek to recover 207.9 hours of Attorney Bennett-Smyth's time. Kirschner Aff. ¶ 20. According to CFHC, as of March 25, 2013, CFHC expended a total of 263.2 hours on the case. Id. at ¶ 19. The CFHC is not seeking fees for time spent by CFHC's Legal Director Greg Kirschner (19.2 hours) or time spent by other employees (24 hours). Id. at ¶¶ 21-22.

"In determining the number of hours reasonably expended, the Court must exclude hours that are excessive, redundant, or otherwise unnecessary." Tsombanidis v. City of West Haven, 208 F.Supp.2d 263, 277 (D. Conn. 2002). The court must "scrutinize[ ] the time records submitted to ensure that the time was 'usefully and reasonably expended.'" Valley Hous. Ltd. v. City of Derby, 2012 WL 1077848, at *7 (D. Conn. Mar. 30, 2012). To that end, "[a] fee application must be supported by contemporaneous time records which describe with specificity the work done." Id. (quoting Conn. Hosp. Ass'n v. O'Neil, 891 F.Supp. 687, 690 (D. Conn. 1994)).

The defendants argue that (1) many of the notations regarding Attorney Bennett-Smyth's time are vague and "require further explanation," and (2) because the records reflect that joint work prepared by Attorney Bennett-Smyth and Assistant U.S. Attorney Ndidi Moses, who represents the government, "an award based upon

4

...
the submission of counsel may impermissibly compensate the Intervenors for work done by the United States." Defs.' Mem. in Opp. Mot. Att. Fees (Doc. No. 139) at 3.

The court notes that, to meet the specificity requirement, time records should set forth the nature of the work done, the need for it, and the amount of time reasonably required. Ragin v. Harry Macklowe Real Estate Co., 870 F.Supp. 510, 520 (S.D.N.Y. 1994). Courts have rejected records that state "reviewed docs," or "clients re: testimony." Id. (citing F.H. Krear & Co. v. Nineteen Named Trustees, 810 F.2d 1250, 1265 (2d Cir. 1987)). Similarly, the Ragin court rejected records that read, "research and draft brief," "telephone call to S. Berger," "letter to Suzanne Berger," and "research for reply brief." Id.

There are similarly vague records in this case. For example, in various records, Attorney Bennett-Smith listed "correspondence with witnesses and with AUSA," "communicate with clients; review documents," "research issues of evidence," "prepare examinations," "emails with opposing counsel and with AUSA," "prepare for hearing," "analyze status of pleadings," and "phone calls and emails with HUD." CT Fair Housing Time Sheets. These records do not allow the court to determine the need for the work and whether that amount of time was reasonable. Ragin, 870 F.Supp. at 520. Further, as the Ragin court noted, the need for specificity is even greater when there is an "interrelationship of issues and parties in complex litigation." Id. The court takes notice of the defendants' argument that it cannot determine whether the amount of time Attorney Bennett-Smyth spent on the research and drafting of various joint motions was reasonable because the records do not

5

provide sufficient detail to understand what parts he worked on with regard to those motions.

In light of the above, the court reduces the number of hours by 20% to reflect a reasonable number of hours expended. See id. at 521 (stating that, "the courts in this Circuit intermittently have seen fit to adopt roughly a 30% fee reduction[1] rule for an attorney's failure to keep contemporaneous time records of their services"). Accordingly, the court concludes that 166.32 hours is a reasonable number of hours to have expended in this case. Based on a rate of $225 per hour, the presumptively reasonable fee is $37,422. See Parris, 844 F.Supp.2d at 270 (multiplying the rate by the number of hours to reach the presumptively reasonable fee).

3. Reasonable Adjusted Fee

The final step in determining the appropriate attorney fee to award "is to inquire whether an upward or downward adjustment is required." Id. According to the Supreme Court, "'the most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.'" Id. (quoting Farrar v. Hobby, 506 U.S. 103, 114 (1992)). The defendant has not argued, nor does this court conclude, that a reduction is necessary on this basis, as the intervenors were successful on all of their claims. See Am. Ruling. However, the defendants argue that "[t]he relative financial condition of the parties weighs against the award of attorney's fees in this case." Defs,' Mem. in Opp. Mot. Att. Fees at 3.

---

[1] The court notes that, according to the CFHC, it has already reduced its billing by 21%. Although the court makes no judgment as to whether that billing was reasonable, it has considered the CFHC's good faith efforts to reduce its billing—as well as the fact that not all of the time records were vague—and, therefore, reduces the hours billed by 20% rather than the 30% reduced in Ragin.

6

In Vulcan Society of Westchester Cnty, Inc. v. Fire Dept. of the City of White Plains, 533 F.Supp. 1054, 1060 (S.D.N.Y. 1982), the Southern District of New York held that, "[t]he capacity of defendants to pay fees is a factor that should be weighed" when determining the appropriate fee award. However, the court noted that "financial condition—ability to pay—should only be given substantial weight in cases of real or extreme hardship." Id. (citing Cohen v. West Haven Bd. of Police Commissioners, 638 F.2d 496, 506 (2d Cir. 1980)). In Cohen, the Second Circuit stated that, "in setting a fee, the court may take into account the relative wealth of the parties." Cohen, 638 F.2d at 505 (emphasis added).

Courts have explained that defendants who seek a reduction in fees must be specific as to their ability to pay: merely explaining that the defendants earned a certain salary (in an undisclosed year) without providing evidence of their "financial assets, liabilities, income, and expenses," is insufficient to show financial incapacity. Mariani v. Banat Realty, 1993 WL 86530, at * 1 (E.D.N.Y. Mar. 18, 1993); see also Quigley v. Winter, 598 F.3d 938, 958 (8th Cir. 2010) (stating that the defendant failed to "submit any evidence of his financial status or his net worth to address any issue of his inability to pay a substantial fee award").

In their Opposition to the government and intervenors' Motion for Attorney's Fees, the defendants argued that they are private individuals without the means to pay a substantial attorney's fee on top of the compensatory and punitive damages they already owe. The defendants explained in their Opposition that Mr. Hylton grossed approximately $43,000 whereas Mrs. Hylton makes $26 per hour, working 32 hours per week (or $832/week). Id.

7

In light of case law requiring defendants to provide evidence of their financial assets, liabilities, income, and expenses, the court directed the defendants to submit an affidavit to the court providing such information as to each defendant. See Order (Doc. No. 142). The court informed the defendants that, if they wished the court to consider their relative wealth when determining the propriety of awarding or the amount of attorney's fees in this case, or both, they needed to abide by the Order or else the court would deem the argument waived. Id.

Only Mrs. Hylton has provided such an affidavit to the court. See Affidavit (Doc. No. 145). In it, she stated she has a net income from full-time employment of $698 per week and receives an additional $360 every two weeks from part-time employment. Id. at ¶ 4. Assuming Mrs. Hylton works 50 weeks out of the year, she earns $43,900 in net income per year. In addition, she earned an additional $42,072 in rental income in 2012. Id. Therefore, the court concludes that Mrs. Hylton makes $85,972 per year, which is well over the per capita personal income in Connecticut as of 2008 (the most recent year for which there are data). According to the Connecticut Department of Economic and Community Development, the per capita personal income in Connecticut in 2008 was $56,248. Conn. Dept. of Economic and Comm. Dev., Per capita income by regions: CT/NE/US: 1969-2008, located at: http://www.ct.gov/ecd/cwp/view. asp?a=1106&q=250652. However, Mrs. Hyltons lists her monthly expenses at $7,603 for utilities, phones, and mortgage payments for both her own house and the rental properties that she owns. Taking her income and costs into consideration, Mrs. Hylton's yearly costs are $5,264 greater than her annual income.

The intervenors argue that Mrs. Hylton has failed to provide sufficient information to determine her relative wealth. Her affidavit "makes no mention of any investment, any bank account, life insurance policy, equity holdings, or fixed-income holdings of any kind." Intervenors' Reply Re: Affidavit (Doc. No. 146) at 2. The intervenors also argue that exhibits introduced at trial show that tenants at 5 Townline Road pay for their own utilities (other than water), which contradicts Mrs. Hylton's claims that she pays $572 per month for utilities at 6 Meg Way (her home) and at 5 Townline Road. Id; see also Plaintiff's Ex. 36-37. Further, the intervenors note their skepticism regarding Mrs. Hylton's $469 per month phone charges. Intervenors' Reply Re: Affidavit at 2.

The court agrees that Mrs. Hylton's financial affidavit is not as complete as it could be. However, Mrs. Hylton has provided information, under oath, which suggests her financial condition is one of "real or extreme hardship," if an attorney's fee of the amount determined, on top of monetary awards to plaintiffs, is imposed. Vulcan Society, 533 F.Supp. at 1060. Even more importantly, the court notes Mrs. Hylton's relative culpability in this case. The court concludes that a reduction in fees as to Mrs. Hylton is warranted. When a party seeks attorney's fees from multiple defendants, the court may set "the percentage for which each defendant is liable where the claims against the defendants are separate and distinct or where culpability is significantly unequal.'" Koster v. Perales, 903 F.2d 131, 139 (2d Cir. 1990) (abrogated on other grounds). Given Mrs. Hylton's lesser level of culpability, see Am. Ruling at 32 (deciding to not award punitive damages as against Mrs.

Hylton), and her limited ability to pay, the court will hold Mrs. Hylton liable for one-quarter of the fee award ($9,355.50).

As for Mr. Hylton and HREM, they have presented no specific evidence regarding their financial condition, as they were invited by the court to do, nor are there compelling reasons to hold either Mr. Hylton or HREM liable for a smaller share of the fee award. According to the Koster court, in determining how to allocate an attorney's fee award, a court, in its discretion, "may hold the responsible parties jointly and severally liable for the fee award." Id. Therefore, the court concludes that Mr. Hylton and HREM will be jointly and severally liable for the fee award, which is $37,422.

B. Injunctive Relief

Section 3613(c)(1) authorizes the court to award a plaintiff relief in the form of "any permanent or temporary injunction . . . or other order (including an order enjoining the defendant from engaging in such practice or ordering such affirmative action as may be appropriate)." 42 U.S.C. § 3613(c)(1). "The Court must craft injunctive relief with a view toward the statute's goals of preventing future violations and removing lingering effects of past discrimination. The scope of the injunction is to be determined by the nature and extent of the legal violation." United States v. Space Hunters, Inc., 2004 WL 2674608, at * 8 (S.D.N.Y. Nov. 23, 2004) (citing Rogers v. 66-36 Yellowstone Blvd. Coop. Owners, Inc., 599 F. Supp. 79, 83 (E.D.N.Y. 1984)). "[T]he two most common forms of injunctive relief requested under the FHA seek either to prohibit the offending party from engaging in future acts of housing discrimination or to impose upon that party certain affirmative duties to atone

for past discrimination and prevent recurrence of such acts." Ueno v. Napolitano, 2007 WL 1395517, at * 6 (E.D.N.Y. May 11, 2007). In determining whether or not to grant a request for injunctive relief, "[t]he critical question . . . is whether a sufficiently flagrant violation of the plaintiffs' civil rights—the guidepost for granting FHA injunctive relief—has occurred." Id. at * 4.

The government and the intervenors argue that injunctive relief is appropriate in this case because "the defendants' discriminatory conduct was intentional . . . " Joint Mem. in Supp. Mot. Inj. Relief at 5. According to the Ueno court, an award of punitive damages weighs in favor of granting injunctive relief because "it is an indication that the defendants engaged in their discriminatory conduct despite knowledge of its unlawfulness." Ueno, 2007 WL 1395517, at * 4. "A finding to this effect, coupled with . . . [a] continued denial of wrongdoing, [may] convince[ ] the court that there exists 'some cognisable danger,' the defendants may again refuse to rent their property on the basis of race, but with greater effort to obscure their discriminatory intentions." Id (internal citations omitted).

The court awarded punitive damages against Mr. Hylton because his "conduct was, by its very nature, indicative of evil motive." Am. Ruling at 32. Such a finding weighs in favor of granting injunctive relief. Ueno, 2007 WL 1395517, at * 4. Furthermore, as an example of why injunctive relief is necessary in this case to prevent future harm, the government and intervenors point to the fact that Mr. Hylton—after becoming aware of the intervenors' Complaint to the Department of Housing and Urban Development ("HUD")— continued to make disparaging, discriminatory comments to the HUD investigator. Joint Mem. in Supp. Mot. Inj.

Relief at 5; see also Am. Ruling at 9.  The court agrees that such conduct suggests that injunctive relief is necessary to "prevent [the] recurrence of" discriminatory conduct.  Ueno, 2007 WL 1395517, at * 6.

Although the court did not award punitive damages against Mrs. Hylton or HREM, the court concludes that injunctive relief is necessary as to both Mrs. Hylton and HREM because there is "some cognizable danger of recurrent violation." Id. at *3.  As the sole owner, officer, and director of HREM, see Am. Ruling at 2, Mr. Hylton should be enjoined from doing through his company, what he may not do as an individual.   As for Mrs. Hylton, she turned a blind eye to Mr. Hylton's conduct and allowed it to continue.  Relief in the form of an injunction as to Mrs. Hylton will ensure that she will actively protect, with regard to the properties she owns, tenants or prospective tenants from discriminatory conduct, rather than allow Mr. Hylton or any other agent to violate the FHA.  To the extent that Mrs. Hylton assumes a greater role in managing her properties, the injunction will ensure that she will not perpetuate the behavior in which she allowed her husband to engage.  For these reasons, the court concludes that injunctive relief is appropriate as to all defendants.

The defendants do not object to the government and intervenors' request for the following injunctive relief: a general injunction prohibiting the defendants from violating the FHA and a requirement that the defendants include in their advertising and communications (i.e., in any leases, applications, and any promotional materials) that they are an "Equal Housing Opportunity Provider."  Defs.' Mem. in Opp. Mot. Inj. Relief at 3.  The court, therefore, agrees that such relief is appropriate and grants it.  See Rogers, 599 F. Supp. at 85-86 (approving prohibitive relief, i.e., forbidding a

defendant from disobeying the law, and requiring "defendants to take definite steps via education and advertising towards sustained lawful conduct").

However, they argue that other requests are overly burdensome and disproportionate to their violations. Id. Those requests to which the defendants object are that the defendants undergo annual training; that they notify the public of their nondiscriminatory practices and their obligation to comply with the FHA by posting signage, in a visible location, in all properties owned, operated, or managed by defendants; and that they keep records of any complaints of discrimination and inform the United States of such complaints. Id. at 4-6. The court will address each in kind.

    1. Annual Training

The government and intervenors request that the defendants complete at least three hours per year, for three years, of Fair Housing Act training by an entity pre-approved by the Department of Justice. Joint Mem. in Supp. Mot. Inj. Relief at 6. The defendants argue that they (1) are capable of reviewing and interpreting any educational material provided to them on the Fair Housing Act without attending classes, and (2) will suffer an undue burden if they are forced to miss work to attend training. Defs.' Mem. in Opp. Mot. Inj. Relief at 5.

As the government and intervenors note, there is evidence that training is necessary because, up until this lawsuit, Mrs. Hylton was unaware of her obligations as a landlord under the Fair Housing Act. Joint Mem. in Supp. Mot. Inj. Relief at 6-7. Training—rather than merely providing educational materials—is the best way to ensure that Mr. and Mrs. Hylton learn of and abide by their obligations. Although the

court recognizes that Mr. and Mrs. Hylton have employment obligations, it does not believe that three hours per year is overly burdensome.  Therefore, the court concludes that training is appropriate and fair form of injunctive relief.

     2.  Posting that Dwellings are Available on a Non-Discriminatory Basis

The defendants argue that, because they do not operate a rental office—or any office at all—it is impossible for them to post a sign indicating that its dwellings are available for rent on a non-discriminatory basis.  Defs.' Mem. in Opp. Mot. Inj. Relief at 4.  The court agrees that this requirement does not meet the circumstances of this case.  However, to ensure that the goal of a posting requirement is met, the court believes it would be appropriate for the defendants to post such a sign in any housing units being shown for rental.

     3.  Reporting

Lastly, the defendants argue against a reporting requirement by claiming that it is unlikely that anyone would complain to them about a discriminatory housing violation.  Id. at 6.  According to the defendants, "[i]t is far more likely, as happened here, that the defendants will become aware of any . . . complaint after it is filed with HUD and/or the United States."  Defs.' Mem. in Opp. Mot. Inj. Relief at 6.

The government and intervenors argue that a tenant may complain to Mrs. Hylton about the conduct of Mr. Hylton (or vice versa), and that it would be appropriate for the defendants to report such conduct to the government.  Intervenors' Reply (Doc. No. 141) at 3.  The court agrees that a reporting requirement would serve to inform the government of any internal complaints made against Mr. or Mrs. Hylton.  Furthermore, with regard to the Hyltons' argument that there is no need

to report complaints made to HUD, the court does not follow this logic. Were a tenant or prospective tenant to file a complaint with HUD, the reporting requirement would ensure that the Hyltons notify counsel for the government of such a complaint. The mere fact that another entity within the United States government is aware of a complaint alleged against the Hyltons does not mean that counsel for the government familiar with this case would have notice absent this reporting requirement. Therefore, the court concludes that this reporting requirement is appropriate.

### III.  CONCLUSION

For the foregoing reasons, the intervenors' Motion for Attorney's Fees (Doc. No. 124) is granted in part, and the government and intervenors' Motion for Injunctive Relief (Doc. No. 126) is granted in part. The total amount of attorney's fees to be awarded is $37,422. Mr. Hylton and HREM are jointly and severally liable for the full $37,422 award. Mrs. Hylton is liable for $9,355.50 of the award. The Injunctive Relief Order is entered in a separate Order.

**SO ORDERED.**

Dated at New Haven, Connecticut, this 26th day of July, 2013.

                 /s/ Janet C. Hall
               Janet C. Hall
               United States District Judge